

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RITA JOHNSTON, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:17-CV-279-A |
| | § | |
| CITY OF WESTWORTH VILLAGE, ET AL., | § | |
| | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendants Corporal Darby ("Darby") and Officer Mayorga ("Mayorga"), the motion of defendant City of Westworth Village ("Village"), and the deemed motion[1] of defendant Penny Loyd ("Loyd") to dismiss. The court, having considered the motions, the responses of plaintiffs, Rita Johnston and Angie Watkins, as next friend of LMW, a minor, the replies of Darby, Mayorga, and Village, the record, and applicable authorities, finds that the motions should be granted.

I.

Plaintiffs' Claims

On April 5, 2017, plaintiffs filed their original complaint. Rita Johnston ("Rita") is the mother of Jason Johnston

---

[1] By order signed June 29, 2017, the court deemed that the motion filed on behalf of Darby and Mayorga also applies to defendant Loyd, and gave plaintiffs an opportunity to respond to such deemed motion, which they have now done.

("Johnston") and Angie Watkins is the mother of Johnston's minor son. They allege:

Darby and Mayorga are police officers employed by Village. On April 10, 2015, Darby and Mayorga arrested Johnston, a black tar heroin addict, for misdemeanor theft. They took Johnston to the Village jail. Johnston appeared nervous and upset. During the booking process, Johnston was undressed to put on a jail uniform. Mayorga took Johnston's socks because he realized the long socks could be used by Johnston to harm himself. Mayorga permitted Johnston to keep his athletic shorts, in violation of Village policy and procedure. The shorts were size 3XL and contained a removable drawstring. Mayorga placed Johnston alone in cell #3, where he remained until his arraignment on April 11 at about 11:44 a.m. After the arraignment, Darby placed Johnston back in cell #3 at about 2:00 p.m. on April 11. Video footage shows Johnston sweating and pacing around the cell and, at 2:12 p.m., attempting to commit suicide by strangling himself with a telephone cord. At or about 2:50 p.m., Rita called and told Loyd that she would not be able to post bond for Johnston; Loyd relayed the message to Johnston via intercom. Johnston became irate and Loyd observed him pacing around the cell with his hands around the inner waistband of his jail-issued pants. Loyd

2

minimized the camera and actively browsed Facebook.[2] At 5:15 p.m., Loyd observed Johnston sitting on the ground against his bunk. At or about 5:30 p.m., Loyd dispatched Darby to Johnston's cell. Defendants discovered that Johnston had hung himself by the drawstring from his athletic shorts. Doc.[3] 1 at 3-7, ¶¶ 12-44.

The counts of the complaint are curiously worded, but it appears that both plaintiffs are asserting claims against Mayorga for deliberate indifference and cruel and unusual punishment[4], against Darby and Loyd for deliberate indifference, and against Village for engaging in certain policies, practices and customs.

II.

Grounds of the Motions

Defendants maintain that plaintiffs have failed to plead facts sufficient to state plausible claims against them. The individual defendants additionally assert that they are entitled to qualified immunity.

---

[2]Loyd is alleged to be a dispatcher who monitors inmates via closed circuit monitoring cameras at the Village jail.

[3]The "Doc. __" reference is to the number of the item on the docket in this action.

[4]It appears that the same test applies as to these claims. Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). In any event, plaintiffs do not address the cruel and unusual punishment claim separately in their response.

3

III.

Applicable Legal Principles

A. Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer

that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29.

B.  Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence

could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986); <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." <u>Malley</u>, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991); <u>Duckett v. City of Cedar Park</u>, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. <u>Siegert</u>, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. <u>Connelly v. Comptroller</u>, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In <u>Hunter</u>, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Malley</u>, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err

7

always on the side of caution" because they fear being sued.
. . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. <u>Kovacic v. Villarreal</u>, 628 F.3d 209, 211 (5th Cir. 2010); <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 428 (5th Cir. 1994). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. <u>White v. Pauly</u>, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. <u>Id.</u> at 552. Thus, the failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. <u>Id.</u>; <u>Surratt v McClarin</u>, 851 F.3d 389, 392 (5th Cir. 2017).

C. <u>Vicarious Liability</u>

The law is clearly established that the doctrine of respondeat superior does not apply to § 1983 actions. <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978); <u>Williams v. Luna</u>, 909 F.2d 121, 123 (5th Cir. 1990). Liability

may be imposed against a governmental entity only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivation. Id. at 824.) Thus, to establish governmental liability requires proof of three elements: a policymaker, an official policy, and a violation of

constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued <u>en banc</u> in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

IV.

## Analysis

The individual defendants contend that plaintiffs have not pleaded sufficient facts to state a plausible claim against them. Further, they say that plaintiffs have not pleaded facts to defeat their qualified immunity defense. See <u>Jabary v. City of Allen</u>, 547 F. App'x 600, 607-08 (5th Cir. 2013); <u>Jones v. Lowndes County</u>, 678 F.3d 344, 349 (5th Cir. 2012). The court agrees.

The elements of a constitutional violation of deliberate indifference are: (1) the official was aware of the acts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and, (3) the official's response indicates the official subjectively intended that harm to occur. <u>Thompson v. Upshur County</u>, 245 F.3d 447, 458-59 (5th Cir. 2001). Subjective intent to harm cannot be inferred from a negligent or even grossly negligent response to a substantial risk of serious harm. <u>Id.</u> The deliberate indifference standard is an extremely high standard to meet. <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). Failure to alleviate a significant risk the official should have perceived but did not is insufficient to show deliberate indifference. <u>Id.</u>

Here, plaintiffs respond that the constitutional right of pretrial detainees to suicide prevention is well-established. Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996)(en banc). However, the facts of the cases they cite are not analogous to the facts pleaded here. See Jacobs v. West Feliciana Sheriff's Dep't, 228 F.3d 388, 397-98 (5th Cir. 2000)(where the officers had actual knowledge of the suicide risk but gave a blanket and towel to an inmate placed in a cell where an earlier suicide had taken place, disregarding precautions they knew should have been taken). In this case, plaintiffs have not pleaded facts to show that the individual defendants were aware of a substantial risk that Johnston would commit suicide but refused to treat him, ignored his complaints or engaged in any conduct that would clearly evince a wanton disregard for any serious medical needs. They have not alleged facts to show that Johnston so clearly indicated an intent to harm himself that the individual defendants could have only concluded that he posed a serious risk to harm himself. Sibley v. Lemaire, 184 F.3d 481, 489 (5th Cir. 1999). In fact, the facts plaintiffs allege are nowhere near as egregious as the facts in Sibley, or Hardin v. Hays, 957 F.2d 845 (11th Cir. 1992), or Branton v. City of Moss Point, 261 F. App'x 659 (5th Cir. 2008), or the cases cited in Hare v. City of

Corinth, 135 F.3d 320, 328-29 (5th Cir. 1998), where courts concluded that there was no deliberate indifference.

Plaintiffs allege that Johnston: suffered from drug addiction, Doc. 1 at 3, ¶12; had needle track marks and open sores on his arms, id. at ¶13; appeared nervous[5] and upset, id. at 4, ¶17. They do not cite any case holding that these facts are sufficient to show a significant suicide risk. They plead that Mayorga took Johnston's socks but not his athletic shorts or the drawstring from it. Id. at 4, ¶¶ 19-20. They do not allege that Mayorga was even aware that there was a drawstring in the shorts. They allege that video footage shows Johnston sweating and pacing around his cell and attempting to commit suicide by strangling himself with a telephone cord, id. at 5, ¶¶ 29-30. They do not allege that the individual defendants were responsible for monitoring Johnston at the time or even had knowledge of these things. In sum, the facts alleged are simply too sparse to show that, at the time of the individual defendants' actions or failures to act, it was clearly established in a more particularized sense that they were violating Johnston's

---

[5]The court notes that plaintiffs' responses do not accurately recite the facts they have pleaded. For example, they contend that Johnston was "agitated" and upset, when the word used in the complaint is "nervous." Docs. 21 & 22 at 1. Many of their references to the complaint are similarly misleading.

constitutional rights. See Brosseau v. Haugen, 543 U.S. 194, 199-200 (2004).

Plaintiffs allege that they are entitled to conduct discovery before the dismissal of their claims against the individual defendants. However, to be entitled to discovery, plaintiffs must have pleaded sufficient facts to state a claim plausible on its face and must have asserted facts that, if true, would overcome the qualified immunity defense. Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012). This they have not done. There is no need for clarification of the facts in this case.

To state a claim against Village, plaintiffs had to plead facts to show (1) the existence of a policy or custom; (2) governmental policymakers actually or constructively knew of the policy or custom; (3) a constitutional violation occurred; and (4) the policy or custom was the moving force behind the violation. Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-33 (5th Cir. 1996). Plaintiffs cannot rely on conclusory allegations, but must allege specific facts to describe the policy or custom and its relationship to the constitutional violation. Spiller, 130 F.3d at 167.

With regard to Village, plaintiffs assert nothing but conclusory allegations. They cite to cases where failure to train claims could be pursued because of the underlying facts alleged,

but fail to note that the facts of this case do not support such claims. As the Fifth Circuit has noted, <u>Partridge v. Two Unknown Police Officers</u>, 791 F.2d 1182 (5th Cir. 1986), upon which plaintiffs rely, was based on allegations that the inmate in question had become hysterical during questioning, his father had told the jailers that he was suicidal, and records of the inmate's prior incarceration noted that he had attempted suicide. <u>Burns v. City of Galveston</u>, 905 F.2d 100, 104 (5th Cir. 1990). In that instance, failure to train was a potentially viable claim. Generally, however, the deliberate indifference standard in the context of inadequate training is difficult to satisfy, because the plaintiff must show that the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers can be said to have been deliberately indifferent to the need. <u>Shepard v. Hansford County</u>, 110 F. Supp.3d 696, 716 (N.D. Tex. 2015). That standard is not met here.

To the extent plaintiffs are complaining of a policy or lack thereof, the Supreme Court has never recognized a constitutional right to suicide prevention screening or protocols. <u>Taylor v. Barkes</u>, 135 S. Ct. 2042, 2044-45 (2015). In any event, plaintiffs have not pleaded facts to show that any policy was the moving force behind Johnston's suicide.

Finally, absent a constitutional violation, Village cannot be held liable. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986). In this case, plaintiffs simply have not pleaded a viable claim against any defendant, including Loyd. (As Village notes, at most, plaintiffs have alleged that Loyd was negligent in carrying out her duties. Plaintiffs have not pleaded any facts to show that Loyd was aware that Johnston was suicidal and was subjectively deliberately indifferent to the risk that he would commit suicide.)

V.

Order

The court ORDERS that the motions to dismiss be, and are hereby, granted, and plaintiffs' claims against defendants be, and are hereby, dismissed.

SIGNED July 7, 2017.

_____
JOHN McBRYDE
United States District Judge